**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ron Dean GARLICK, Defendant–
Appellant.**

No. 99–30018.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2000

Filed Feb. 22, 2001

Edward A. Murphy, Datsopoulos, Mac-Donald & Lind, Missoula, Montana, for the defendant-appellant.

Kris A. McLean, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

Before: B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER,* District Judge.

* The Honorable William W Schwarzer, Senior District Judge, United States District Court for the Northern District of California, sitting by designation.

FISHER, Circuit Judge:

## Overview

This case involves the use of facsimile transmissions to effectuate the fraudulent sale of used helicopter rotor blades. Appellant, Ron Dean Garlick, was convicted of two counts of wire fraud under 18 U.S.C. § 1343. Count I of the indictment was based on a fax transmission Garlick sent to a prospective buyer in which he misrepresented the age of the blades. Count II was based on a fax transmission the buyer sent to Garlick agreeing to purchase the blades.

Garlick argues these two counts of the indictment were multiplicitous, that the two counts charged only a single offense. The wire fraud statute, however, specifically covers information a defendant transmits through the wires, or that he causes to be transmitted, as part of a fraudulent scheme. Because Count I rested on Garlick's transmission, and Count II rested on an entirely separate use of the wires Garlick caused, the two counts of the indictment were not multiplicitous. Each use of the wires constitutes a separate violation of the wire fraud statute. This concept is well established in the context of mail fraud, and today we hold it applies with equal force in wire fraud cases. In addition, after reviewing the record, we are not persuaded by Garlick's contention that there was insufficient evidence to support his conviction. For these reasons, we affirm the district court.

## Background

Ron Garlick was the owner and general manager of Garlick Helicopters, Inc. ("GHI"), a federally certified facility that repaired aircraft and overhauled aircraft parts. In early 1993, UNC Helicopters ("UNC") approached Garlick about the possibility of purchasing used helicopter blades. In January 1993, Garlick faxed

UNC a letter containing information about certain blades in his company's possession. He also faxed the "scheduled removal component card" for each of the blades. These cards indicated how old the blades were in terms of hours since they were new—important because the Federal Aviation Administration requires the type of blades at issue here to be retired once they have reached 1100 hours of use since new. Also, the price of blades is directly proportional to the number of hours remaining in the blades' effective life. In general, the more hours remaining, the more expensive the blades. The information Garlick sent to UNC indicated the blades at issue in this case were middle-aged, having logged 537 hours.

UNC decided not to purchase the blades from Garlick. It then hired an intermediary company, Aviation Service Corporation ("AVSCO"), to continue its search for used helicopter blades. AVSCO specializes in locating and buying parts and conducting quality assurance checks to insure that parts meet buyers' specifications. On January 27, 1993, Alvin Gilder of AVSCO faxed Garlick inquiring whether GHI had blades that would suit UNC's needs. He requested "complete records" and advised Garlick that "exact time remaining [on the lifespan of the blades] is essential to the sale."

Garlick responded to Gilder that day with a fax listing a variety of blades GHI had for sale, along with their respective "times." Among the blades offered, Garlick listed the same blades he had earlier in the month tried to sell to UNC. In his fax to Gilder, however, Garlick represented the blades were still in their infancy, showing them as having logged only 53.7 hours. Based on this information, Gilder faxed Garlick on January 28, 1993 a commitment to purchase the blades. The commitment to purchase was conditioned upon inspection and, the following day, Gilder traveled to GHI's office in Montana to do so. There, Garlick gave Gilder the component removal cards for each blade. The cards stated each blade had 53.7 hours logged since new, and Gilder followed through with his agreement to purchase the blades. Gilder testified at trial that at no time was he shown any records reflecting the blades' true age of 537 hours since new and that, had he known the blades' correct age, he would not have purchased them.

When UNC ultimately received the helicopter blades, they were unaccompanied by the original records documenting their time since new. Because blades cannot be installed and used on aircraft unless the operator possesses the original records, UNC contacted Garlick requesting they be sent immediately. Several days later, UNC received the purported original records, which stated the blades were 53.7 hours since new. When it tried to install the blades, however, UNC discovered they would not balance properly. After conducting an independent background check, UNC learned through government records that the blades had a true age of 537 hours. UNC returned the blades to Garlick, who eventually refunded its money.

A jury convicted Garlick of two counts of wire fraud, each alleging a separate use of the wires in furtherance of a fraudulent scheme. He contends the two counts were multiplicitous and, even if not, that there was insufficient evidence to convict him. We review de novo whether an indictment is multiplicitous and thus violates a defendant's double jeopardy rights. *United States v. McKittrick,* 142 F.3d 1170, 1176 (9th Cir.1998). There is sufficient evidence to support a conviction if, viewing evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We have jurisdiction under 28 U.S.C. § 1291.

## Discussion

 Wire fraud has three elements: (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme and (3) a specific intent to deceive or defraud. *United States v. Blinder*, 10 F.3d 1468, 1472 (9th Cir.1993). In the context of wire fraud's counterpart mail fraud statute, each mailing in furtherance of the scheme constitutes a separate violation. *United States v. Vaughn*, 797 F.2d 1485, 1493 (9th Cir.1986). So, too, we have noted—in dictum at least—that each use of the wires under the wire fraud statute constitutes a separate offense. *See United States v. Poliak*, 823 F.2d 371, 372 (9th Cir.1987). Insofar as we have never expressly held that each use of the wires constitutes a separate violation of 18 U.S.C. § 1343, we do so now.

The wire fraud statute, 18 U.S.C. § 1343, provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... any writings ... for the purposes of executing such scheme or artifice, shall be fined ... or imprisoned ... under this title....

It shares a common language and goal with the mail fraud statute. By their terms, both protect the instrumentalities of communication, making the *use* of the mails .or wires as part of a fraudulent scheme an independent offense quite separate from any other potentially illegal conduct.

The legislative history of the wire fraud statute, sparse as it is, reveals it was meant to replicate the mail fraud statute, which antedated it by some 80 years. *See* S. REP. No. 44, 82nd Cong., 1st Sess. 19 (1951) (18 U.S.C. § 1343 was designed as "a parallel [to the] provision now in the law for fraud by mail"). Courts have consistently construed Congress' intent behind the mail fraud statute broadly, focusing on the use of the mails itself, not on the underlying scheme or a particular fraud victim. For example, in *Mitchell v. United States*, 142 F.2d 480 (10th Cir.1944), the Tenth Circuit addressed a conviction for eight counts of mail fraud. The indictment first charged the defendant with devising a single, continuing scheme. Each count of the indictment, after referring to this scheme, charged a separate use of the United States mails. The court distinguished mail fraud from other continuing offenses, noting that each use of the mails constitutes an independent violation of the law.

The crimes charged in each count constitute one continuous scheme to defraud; the same scheme is alleged in each count of the indictment, and the offense charged in each count has its genesis in the continuing scheme to defraud. *But the gist and crux of the offense is the use of the mails in the execution of the scheme;* it is the use of the mails for purpose of executing the scheme which gives the federal courts jurisdiction over the offense. Furthermore, *each separate use of the mails in the execution of the continuing scheme constitutes an offense against the laws of the United States ....*

*Id.* at 481 (emphasis supplied) (internal citation omitted). *Cf. Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 60 L.Ed. 706 (1916) (Holmes, J.) (holding that it is constitutional for Congress to "make each putting of a letter into the postoffice a separate offense").

More recent decisions have echoed the view that "[t]he focus of [the mail and wire fraud statutes] is upon the misuse of the instrumentality of communication." *United States v. Alston*, 609 F.2d 531, 536 (D.C.Cir.1979). In *United States v. Molinaro*, 11 F.3d 853 (9th Cir.1993), this court, too, noted the purpose of the mail fraud statute was "to prevent misuse of the mails." *Id.* at 860. *See also United States v. Monostra*, 125 F.3d 183, 187 (3rd

Cir.1997) ("[T]he mail and wire fraud statutes do not penalize the victimization of specific persons; rather, they are directed at the instrumentalities of fraud.").

In both the mail and wire fraud contexts, courts have consistently recognized Congress' intent, repeatedly holding each use of the mails or wires to be a discrete offense. *United States v. Vaughn*, 797 F.2d 1485 (9th Cir.1986), upheld a defendant's conviction on, among other things, four counts of mail fraud, each relating to a separate use of the mails. There, we noted: "Each mailing in furtherance of the scheme constitutes a separate violation." *Id.* at 1493. *United States v. Poliak*, 823 F.2d 371 (9th Cir.1987), applied this rule to the bank fraud statute, 18 U.S.C. § 1344, upholding a defendant's conviction for 10 counts of bank fraud because of 10 checks he had written as part of a check kiting scheme. The rule that each use of the mails or wires constitutes a separate violation of the mail or wire fraud statutes directly informed the *Poliak* court's analysis:

> This reading of 18 U.S.C. § 1344 is supported by our readings of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, on which the bank fraud statute is patterned. Under the mail fraud statute, each mailing in furtherance of the scheme constitutes a separate violation. Each use of the wires under the wire fraud statute is a separate offense.

*Id.* at 372 (internal citations omitted). *See also United States v. Nash*, 115 F.3d 1431, 1441 (9th Cir.1997) (noting that the mail and wire fraud statutes "punish each use of the mail or wires"). Because *Poliak* was a bank fraud case, the statement regarding § 1343 technically was dictum. To the extent this Circuit has not expressly held, then, that each use of the wires constitutes a separate violation of the wire fraud statute, we do so now.

Other circuits have held similarly. In *Sibley v. United States*, 344 F.2d 103 (5th Cir.1965), the defendant, a booking agent, sent a telegram to a performer advising him that bookings had been made at certain venues in Texas. The performer then sent the defendant, by telegraphic transfer, $60 as an advance on Sibley's commission for making the bookings. Sibley sent the performer another telegram advising him of bookings he had made in Louisiana, and the performer responded again with a telegraphic transfer of money to Sibley. Sibley, in fact, had never made the bookings. The government charged Sibley with four counts of wire fraud. In upholding the conviction, the Fifth Circuit noted that "[e]ach of the four counts was based upon a separate communication by wire." *Id.* at 104. The court further observed, "[i]t has been held many times under the mail fraud statute ... that each separate use of the mails constitutes a separate offense.... The same principle of construction should apply and has been applied to the wire fraud statute." *Id.* at 105 (internal citations omitted). *See also United States v. Alston*, 609 F.2d 531, 535–36 (D.C.Cir.1979) ("The mail and wire fraud statutes prescribe a penalty for each use of the mails or wires...."); *United States v. Luongo*, 11 F.3d 7, 9 (1st Cir. 1993) (" 'It is well established that each use of the wires constitutes a separate crime under 18 U.S.C. § 1343, even if the several uses are in pursuance of but one criminal enterprise.' ") (quoting *United States v. Fermin Castillo*, 829 F.2d 1194, 1199 (1st Cir.1987)); *United States v. Calvert*, 523 F.2d 895, 914 (8th Cir.1975) ("It is well settled that each use of the mails is a separate offense under the mail fraud statute.... The same is true of the use of the wires under the wire fraud statute ....") (internal citations omitted).

## I. Multiplicity.

 Having held that, as in the mail fraud context, each use of the wires constitutes a separate violation of the wire fraud statute, we now address Garlick's principal argument. Garlick challenges counts I and II of the indictment for multiplicity— charging a single offense in more than one

count. The test for multiplicity is whether each count "requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see also United States v. Kennedy*, 726 F.2d 546, 547–48 (9th Cir.1984).

Count I of Garlick's indictment was based on the January 27, 1993 fax he transmitted to AVSCO that misrepresented a material fact, the age of the helicopter blades, in order to convince AVSCO to purchase them. This is a clear violation of the wire fraud statute which prohibits "transmit[ting] ... by means of wire ... any writings ... for the purposes of executing" a scheme to defraud. 18 U.S.C. § 1343. The government established the existence of a scheme to defraud, Garlick's intent to defraud and Garlick's transmission over the wires of information that furthered this scheme. The government proved this "use" of the wires by introducing as evidence a copy of the fax transmission itself. Garlick's conviction on Count I, then, is as sound as it is uncontroversial.

Garlick contends the second count—based on the January 28, 1993 fax AVSCO transmitted to him—is multiplicitous because it relies on the same underlying facts as the first count. Count II, however, alleged a separate "use" of the wires. While it did not require further acts on Garlick's part, it did require proof of an additional "fact" not necessary to Count I, namely, the occurrence of a second wire transmission. The government proved this additional fact by introducing as evidence the fax sent from AVSCO to Garlick.

The government also showed that Garlick "caused" this second transmission. In so doing, he violated the express terms of § 1343, which encompasses one who "causes to be transmitted" any writings in furtherance of a fraudulent scheme. *See* 18 U.S.C. § 1343. "One 'causes' use of the mails or wire communications where such use can reasonably be foreseen, even though not specifically intended." *United*

*States v. Cusino*, 694 F.2d 185, 188 (9th Cir.1982).

One piece of evidence—the fax from Garlick to AVSCO—*had to be* proved to establish Count I and also *could have been* used to help establish Count II. The first fax helped show Garlick "caused" the second fax, a necessary element of Count II. This does not make the two offenses multiplicitous, however, because Count II's causation element could have been established through other means such as testimonial or documentary evidence of Garlick's scheme. Although each count of the indictment revolved around the same scheme to defraud, each required proof of at least one additional fact that the other did not. Appellant's conviction on Count I and Count II, therefore, passes the *Blockburger* multiplicity test. *See Kennedy*, 726 F.2d at 548.

In sum, Appellant's argument that the two wire fraud counts were multiplicitous is without merit. Each count rested on entirely separate uses of the wires. Each time Garlick used the wires, or caused them to be used, in furtherance of his scheme, he committed a new violation of the wire fraud statute. He therefore was properly charged with two counts of wire fraud for the two fax transmissions at issue here.

## II. Sufficiency of the Evidence.

Garlick also argues the government failed to put forth sufficient evidence to sustain the jury's guilty verdict as to Counts I and II. After reviewing the record, we conclude the evidence was sufficient for a rational member of the jury to find Garlick intentionally misrepresented the hours logged on the blades and used the wires as part of a plan to effectuate the fraudulent sale of those blades. The government established that Garlick had in his possession original cards showing the true 537–hour age of the blades. At the same time, there were handwritten entries in GHI logs representing the blades to be only 53.7 hours since new. When asked by

UNC for the original documents accompanying the blades, Garlick supplied false records.

Also, Garlick's trial testimony was called into serious question on at least two important points, one relating to the status of the original cards when he initially purchased the blades, the other relating to his awareness of military records establishing the true age of the blades. Given the existence of records in Garlick's possession revealing the true age of the blades, his creation of false records and his at times wavering testimony, a rational jury could easily have found Garlick guilty of using the wires as part of a scheme to obtain money by fraudulent pretenses.

Garlick last argues there was insufficient evidence to support his conviction on Count II—in particular, because the fax from AVSCO to him was not in furtherance of the scheme and that, at most, the two faxes were part of one transaction. These arguments have no force. AVSCO faxed Garlick a firm commitment to purchase the blades in question. In general, to be in furtherance of a scheme, the charged mailing or wire transmission need not be an essential element of the scheme, just a "step in the plot." *Schmuck v. United States,* 489 U.S. 705, 711, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Here, AVSCO's acceptance of Garlick's fraudulent offer was essential for his plan to succeed. Finally, Garlick's attempt to lump the two separate uses of the wires into one transaction fails because, again, each use of the wires is a separate offense, "notwithstanding the fact that the defendant may have been engaged in one fraudulent scheme." *See United States v. Calvert,* 523 F.2d 895, 914 (8th Cir.1975); *see also Nelson v. United States,* 178 F.2d 458, 458–59 (9th Cir.1949).

Because the government provided sufficient evidence to support the wire fraud charges for which the jury ultimately convicted Garlick, and because the two counts of wire fraud were not multiplicitous, we affirm.

AFFIRMED.