UNITED STATES of America, Plaintiff–Appellee,

v.

A.G.E. ENTERPRISES, INC., and A.G.E. Corporation, Inc., Defendants–Appellants.

UNITED STATES of America, Plaintiff–Appellee,

v.

Shirley Colletti, Defendant–Appellant.

No. 00–10188, 00–10194, 00–10195. D.C. No. CR–N–95–049–HDM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2001.

Decided June 29, 2001.

---

Before NOONAN and SILVERMAN, Circuit Judges, and SEDWICK, District Judge.[1]

1. The Honorable John W. Sedwick, United States District Judge for the District of Alas-

**442**

MEMORANDUM [2]

Appellants A.G.E. Enterprises, Inc. and A.G.E. Corporation, Inc. (collectively "A.G.E.") and Shirley Colletti ("Colletti") appeal their jury convictions for wire fraud, in violation of 18 U.S.C. § 1343, and RICO activities, in violation of 18 U.S.C. § 1962(c) and (d) and 18 U.S.C. § 1963. Appellants contend that there were various errors in the proceedings below.

### A. Bankruptcy Fraud Not Necessary for Wire Fraud Convictions

■ The superceding indictment is very specific with respect to the wire fraud charged in Counts Eight through Twenty–Eight. Although the counts incorporate by reference the factual allegations of Count Four, which detail Joseph Conforte's ("Conforte") use of the wires to commit bankruptcy fraud, the counts also allege a separate scheme to defraud the IRS, including specific details as to appellants' involvement in the scheme. For example, the indictment describes how A.G.E. was created solely to hide Conforte's Mustang Ranch income from the IRS. The superceding indictment alleges that the defendants, including Colletti, would, at Conforte's directions, wire money from A.G.E.'s accounts in the United States to foreign accounts for Conforte's ultimate use and benefit, and would cause money to be drawn from A.G.E.'s accounts in amounts payable to Colletti that would ultimately be transferred to Conforte's control. Finally, the indictment identifies twenty-one specific uses of the wires by date, amount, and payee. These allegations, if proven, would satisfy the fraud element required for a wire fraud convictions regardless of the disposition of the

bankruptcy fraud charged in other counts. *See United States v. Garlick,* 240 F.3d 789, 792 (9th Cir.2001) (wire fraud has three elements (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) a specific intent to deceive or defraud). Accordingly, the disposition of Counts One through Three was inconsequential to the wire fraud charges on which appellants were convicted.

The same is true with respect to the RICO counts. The superceding indictment proposes the twenty-one alleged instances of wire fraud as well as monthly bribery payments to the Storey County Commissioner and Storey County Sheriff as predicate acts which support the RICO charges. The superceding indictment also describes the purpose of the enterprise as "generating, collecting, receiving, and holding income, whether reported or unreported to the Internal Revenue Service, from the property known as the Mustang Ranch, and by illegally distributing said income to defendant Joseph Conforte." These statements demonstrate that proof of the RICO counts, at least with respect to appellants, did not rest upon proof of the bankruptcy fraud charges in Counts One through Three.

### B. Attorney–Client Privilege

Tudor Chirila ("Chirila"), an attorney and prior president of A.G.E., was permitted to testify regarding three conversations he had with Colletti in late 1996. The district court found that the crime-fraud exception trumped appellants' attorney-client privilege. Colletti appeals that finding.

ka, sitting by designation.

**2.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

■ The crime-fraud exception applies to attorney-client communications which "solicit or offer advice for the commission of a crime or fraud." *In re Grand Jury Subpoena 92–1(SJ)*, 31 F.3d 826, 829 (9th Cir.1994) (internal quotation omitted). To successfully invoke the exception, the government must make a prima facie showing that the exception applies which requires non-privileged evidence that is "sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *United States v. de la Jara*, 973 F.2d 746, 748 (9th Cir.1992) (internal quotation omitted). The circuit has not yet decided which standard of review applies to a review of the government's prima facie showing. *See United States v. Bauer*, 132 F.3d 504, 509 (9th Cir.1997) (electing not to resolve uncertainty); *In re Grand Jury Proceedings*, 87 F.3d 377, 380 (9th Cir.1996) (electing not to decide between *de novo* and abuse of discretion).

Regardless of the standard of review employed, the government satisfied its prima facie burden through the testimony and evidence presented by David G. Menchetti ("Menchetti"), a legal advisor to A.G.E. A.G.E. retained Menchetti as general counsel for approximately fourteen months between January 1995 and February or March 1996. Menchetti attested to several phone conversations he had with Conforte during that period in which they discussed the option agreement. Menchetti stated that Conforte had told him that the option was a sham transaction that was originally created to "usurp the government's deal" but he, i.e., Conforte, feared Colletti would at some point attempt to record and execute on it. These facts are also set forth in a memorandum dated June 8, 1995, which Menchetti wrote following one of his telephone conversations with Conforte and which was entered into evidence.

■ Chirila was hired to manage Nevada Rodeway LLC. Colletti and others formed Nevada Rodeway in order to exercise the option agreement. It follows that Menchetti's testimony and memorandum, which demonstrate that Colletti knew that fraud on the IRS would occur should she exercise the option agreement, supports a reasonable belief that *in camera* review of Chirila's testimony would yield evidence that Colletti sought Chirila's advice in order to take actions which she knew would result in a fraud on the IRS. *See United States v. Munoz*, 233 F.3d 1117, 1136 (9th Cir.2000) (reckless disregard for the consequences of one's actions satisfies the intent requirement for mail fraud); *United States v. Ely*, 142 F.3d 1113, 1121 (9th Cir.1997) (same in bank fraud context). Chirila in fact testified that Colletti told him that the option was a sham and was intended to forestall the forfeiture of Mustang Ranch to the IRS. The district court correctly concluded that Colletti sought Chirila's advice in order to commit a fraud. Consequently, the district court did not err and correctly applied the crime-fraud exception.

## C. Sufficiency of the Evidence

A conviction is supported by sufficient evidence if the evidence, viewed in the light most favorable to the government, would allow any rational trier of fact to find the essential elements of the charged offense beyond a reasonable doubt. *See United States v. Crawford*, 239 F.3d 1086, 1092 (9th Cir.2001). Where the charge is wire fraud, "there must be sufficient evidence to show that the defendant willful[ly] participate[d] in a scheme with knowledge of a fraudulent nature and with intent that these illicit objectives be achieved." *United States v. Ciccone*, 219 F.3d 1078, 1084 (9th Cir.2000) (internal

quotation omitted). The requisite knowledge may be established through circumstantial evidence. *See id.*

■ The wire fraud convictions are supported by sufficient evidence. Peter Perry ("Perry"), Joann Olcese ("Olcese"), and Dorothy Tarbet ("Tarbet") all presented testimony that linked Colletti to money missing from Mustang Ranch and the wire transfers to Conforte. Perry's testimony was the most important. Perry testified about meetings between him, Conforte, and Colletti at which they discussed ways Storey County Commissioners could help prevent the IRS from taking over and running Mustang Ranch. At the time, Colletti was a Storey County Commissioner and was receiving $2,500 a month from Conforte. Perry also testified about Colletti's involvement in the wire transfers from A.G.E. to Mygrange, Ltd., which was an "off-the-shelf" company Perry set up to hide Conforte's involvement with Mustang Ranch. Perry identified receipts from six transfers which had been remitted by Colletti. Finally, Perry testified about $750,000 of Mustang Ranch money that was unaccounted for. Perry learned from Conforte that Conforte was receiving quarterly payments from either John Colletti, Colletti's husband at the time, or Henry Bland, a Storey County Commissioner. This was the money that was regularly missing from Mustang Ranch's records. Perry's testimony was corroborated by Olcese, a bookkeeper at Mustang Ranch, who provided further testimony about the wire transfers and other deliveries of money to Conforte and by Tarbet, a cashier at Mustang Ranch, who witnessed Colletti taking money from a Mustang Ranch safe.

### D. Sentencing Issues

A district court's factual findings during the sentencing phase are reviewed for clear error. *See United States v. Mezas de Jesus,* 217 F.3d 638, 642 (9th Cir.2000). The district court's application of the guidelines to the facts of a particular case is reviewed for abuse of discretion. *See United States v. Frega,* 179 F.3d 793, 811 n. 22 (9th Cir.1999), *cert. denied,* 528 U.S. 1191, 120 S.Ct. 1247, 146 L.Ed.2d 105 (2000).

■ The district court found that Colletti had substantial involvement in Conforte's plan to defraud the IRS and was, along with Perry, a principal contact for Conforte in the United States. Accordingly, the district court denied Colletti's request for a two-level reduction pursuant to § 3B1.2 of the sentencing guidelines and, instead, gave a two-level specific offense increase pursuant to § 2F1.1(b)(2) and a two-level role adjustment increase pursuant to § 3B1.1. Based on the evidence discussed above, no clear error exists with respect to the district court's factual findings.

In light of Colletti's knowledge, no abuse of discretion occurred in choosing not to apply the downward adjustment. *See* Sentencing Guidelines, Commentary § 3B1.2 (2000) (a two-level decrease pursuant to § 3B1.2(b) is warranted for defendants found to be "less culpable than most other participants, but whose role could not be described as minimal" under § 3B1.2(a)).

The increases to Colletti's total offense level were also warranted. Considering that the acts of wire fraud for which Colletti was convicted occurred over a period of 14 months and when requested by Conforte, as opposed to at "purely opportune" times, the district court did not abuse its discretion in applying the § 2F1.1(b)(2) two-level increase for more than minimal planning. *See* United States Sentencing Guidelines, Commentary, Application Note (f) § 1B1.1. ("More than minimal planning" exists where the defendant takes "significant affirmative steps . . . to conceal the

offense" or "repeat[s the illegal] acts over a period of time, unless it is clear that each instance was purely opportune."). Lastly, the two-level enhancement pursuant to § 3B1.1 was warranted because Colletti directed the actions of Olcese, who was a "participant" in the scheme, and had some degree of managerial control over the property and assets involved, i.e., Mustang Ranch and its revenues. *See* Sentencing Guidelines, Commentary, Application Note (2) § 3B1.1 (a defendant qualifies for an adjustment under § 3B1.1 where she is "the organizer, leader, manager or supervisor of one or more other participants" or where the defendant "exercised management responsibility over the property, assets, or activities of a criminal organization.").

### E. Juror Bias or Misconduct

Following appellants' conviction, the district court denied motions for a new trial or for judgments of acquittal that were premised on alleged incidents of juror bias and misconduct. The district court's decision is reviewed for abuse of discretion. *See United States v. Hanley,* 190 F.3d 1017, 1031 (9th Cir.1999).

■ An evidentiary hearing is not required every time a defendant alleges juror misconduct or bias. *See id.* The district court is to determine whether a hearing is warranted based on "the content of the allegations, the seriousness or the alleged misconduct or bias, and the credibility of the source." *Id.* (quoting *United States v. Angulo,* 4 F.3d 843, 847 (9th Cir.1993)). In this case, the district court did what it was required to do. After receiving briefing from counsel regarding the alleged misconduct, the court elected to conduct an evidentiary hearing. No more was required.

Appellants contend that the district court failed to adequately question two of the jurors, Cynthia P. and Laura B., during the evidentiary hearing regarding alleged misstatements during *voir dire.* In particular, appellants focus on answers Cynthia P. gave regarding her education, past bankruptcy experiences or her spouse's employment, and answers Laura B. gave regarding her education, disabilities and bias.

■ A new trial is warranted only when an appellant can demonstrate that (1) a juror failed to answer a material *voir dire* question and (2) a correct response would have provided a valid basis for a challenge for cause. *See United States v. Henley,* 238 F.3d 1111, 1121 (9th Cir.2001) (citing *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)). No error occurred in this case because none of the disputed answers, save those related to Laura B.'s disability or bias, could have provided a valid basis for a challenge for cause.

■ With respect to Laura B.'s disability, the district court did not commit clear error in finding that Laura B. did not lie. *See Hanley,* 190 F.3d at 1031 (a district court's credibility determinations and findings of historical fact are reviewed for clear error). The questions at *voir dire* (and on the jury card filled out prior to *voir dire* ) focused on disabilities that would impair a juror's ability to sit on a jury. Laura B.'s answers were truthful. Despite the fact that Laura B. suffers from a seizure disorder and takes medication, her condition, as she testified at the evidentiary hearing, was under control.

■ Where a colorable claim of juror bias is presented, the court is required to investigate the relevant facts and circumstances. *See Dyer v. Calderon,* 151 F.3d 970, 974 (9th Cir.1998), *cert. denied,* 525 U.S. 1033, 119 S.Ct. 575, 142 L.Ed.2d 479

(1998). When an evidentiary hearing is held, due process requires only that the investigation be "reasonably calculated to resolve the doubts raised about the juror's impartiality." *Id.* at 974–975.

■ During *voir dire*, the district court queried jurors regarding their knowledge of Conforte and potential bias. Laura B. informed the court that she had seen an article about the case and Mustang Ranch in the prior day's paper, but did not read past the headline. Laura B. also confirmed that she knew of Mustang Ranch and had heard of Conforte. Appellants did not ask Laura B. follow-up questions about her knowledge. Consequently, the only answer that potentially could have been untruthful was Laura B.'s answer regarding bias.

At the evidentiary hearing, the district court questioned Laura B. regarding her response to the bias question. She reiterated that she did not have any bias prior to the trial and believed she could be fair and impartial. This comports with her response during *voir dire* that she could "put the government to its burden" before convicting the defendants. The court's questioning was reasonably calculated to investigate the alleged bias and, in light of the answer received, there is no clear error in the district court's finding that Laura B. truthfully answered the bias question. *See Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220–21 (9th Cir.1997) (district court's conclusion regarding a juror's candor is entitled to deference).

Lastly, there is no merit to appellant's argument that Laura B. introduced extraneous information into the jury's deliberations. No juror other than Laura B. recalled anyone mentioning extraneous information about Conforte or Ross Brymer, Sr. Accordingly, no clear error exists with respect to the district court's findings on this issue.

## F. Ex Parte Communication

■ The trial judge briefly visited with juror Laura B. upon learning that she had been stuck in a courthouse elevator and had become upset. The judge briefly referenced the incident in open court. Although appellants were present and had the opportunity to observe the jurors for any ill-effects, they made no further inquiry. At the evidentiary hearing, the district court more fully explained the *ex parte* conversation. At that time, A.G.E. informed the court that it "had no problem with that."

The district court was under no general duty to inform the parties. *See Rushen v. Spain*, 464 U.S. 114, 119, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (court should generally relate an *ex parte* communication with counsel when it relates to some aspect of the trial). Nevertheless, the disclosures that were made demonstrate that no harm occurred as a result of the *ex parte* communication. *See United States v. Velasquez–Carbona*, 991 F.2d 574, 576 (9th Cir. 1993) (no prejudice presumed where court is courteous to a juror and asks law clerk to give juror ride to bus stop). It follows that the district court did not err. *See Rushen*, 464 U.S. at 119, 104 S.Ct. at 456 (*ex parte* contact reviewed for harmless error).

## G. Brady Violations

■ Challenges to convictions based on alleged *Brady* violations are reviewed *de novo*. *See United States v. Amlani*, 111 F.3d 705, 712 (9th Cir.1997). Appellants contend that the government failed to produce evidence that it promised Perry that his interests in certain development property would not be subjected to a forfeiture action. To prevail on their *Brady* claim, appellants must show that (1) the evidence not provided was exculpatory or impeach-

ing; (2) it should have been but was not produced; and (3) the suppressed evidence was material to their guilt or punishment. *See United States v. Cooper,* 173 F.3d 1192, 1202 (9th Cir.), *cert. denied,* 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 408 (1999) (citation omitted).

 Appellants cannot establish either the second or third elements. First, there is no proof that the government had an agreement with Perry respecting the development property. Second, appellants cannot show that the allegedly suppressed information was material. During cross-examination, appellants catalogued with Perry the many benefits that he would receive in exchange for his testimony: not having to face the bankruptcy charge, not having to face the additional wire fraud or RICO charges alleged in the superceding indictment, a possibility of avoiding jail time, and a possibility of avoiding significant fines and costs. In so doing, appellants accomplished what they seek to achieve through the evidence they claim should have been disclosed, proof that Perry stood to gain a great deal by testifying for the government. Consequently, the evidence sought is not material to their defense. *See id.* ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

### H. Jury Questionnaire

 Appellants contend that the district court erred by denying their request to use a jury questionnaire. Appellants' argument is without merit. Prior to trial, the district court asked counsel to provide proposed jury questions and, during *voir dire,* allowed counsel to ask follow-up questions. Appellants in fact questioned potential jurors about their knowledge of Conforte and their views on prostitution. Rule 24(a) which permits district courts to allow parties or their attorneys to examine potential jurors or to conduct the examination itself based on questions submitted by the parties and their attorneys does not require any more than this. Therefore, the district court did not abuse its discretion in rejecting the use of a jury questionnaire. *See United States v. Howell,* 231 F.3d 615, 628 (9th Cir.2000) (decision regarding supplemental questions within "the sound discretion" of the district court).

AFFIRMED.