UNITED STATES of America,
Plaintiff–Appellee,

v.

Don H. PACE, Defendant–Appellant.

No. 01–10458.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2002.

Filed Aug. 22, 2002.

**1036**

Bruce R. Heurlin, Karp, Heurlin & Weiss, Tucson, AZ, for the defendant-appellant.

Christina M. Cabanillas, Assistant U.S. Attorney, Tucson, AZ, for plaintiff-appellee.

Before GOODWIN, HAWKINS and FISHER, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge:

Don Pace appeals his conviction and sentence for two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of subscribing a false tax return, in violation of 26 U.S.C. § 7206(1). The main issue on appeal is whether venue existed in the District of Arizona. For the reasons that follow, we reverse Pace's wire fraud convictions but affirm his conviction for subscribing a false tax return.

### Background

For 23 years, Don Pace ("Pace") worked as a successful trial attorney in Cleveland, Ohio. In 1986, he left his law practice and, two years later, formed Pace American Group ("PAG"), an insurance holding company. He remained president and CEO of the corporation until 1994. Pace also served as the vice president and director of American Bonding Company ("ABC"), a subsidiary of PAG providing surety bonds to construction contractors on federal, state, and local government projects. At the time of the alleged offenses, ABC was headquartered in Tucson, Arizona, and maintained a branch office in Pasadena, California.

In 1990, ABC expanded its business into Mexico and entered into a cooperative bonding agreement with Afianzadora Mexicana ("AFIMEX"). Under the terms of the agreement, ABC would reinsure and share the risks of bonds issued by AFIMEX in Mexico. In return, AFIMEX would remit a percentage of the bond premiums to ABC.

In 1992, AFIMEX deposited $36,659.28 of bond premiums to two bank accounts at the ABACO Financial Institution ("ABACO") in Mexico City. One account was under the name of ABC; the other was under American Insurance Group (AIG changed its name to Pace American Group in 1993). ABC was not aware that these accounts existed, and Pace did not disclose them to the company.

### A. Count 78

On April 27, 1992, AFIMEX sent Pace a summary report of the premiums transferred to the ABC / AIG accounts at ABACO. It noted that two deposits had already been completed and that an additional $18,740.00 would be sent pursuant to wire transfer instructions from Pace. AFIMEX mailed this correspondence to AIG's business address in Tucson, Arizona.

Upon receipt of the letter, Pace authorized his secretary to provide ABACO with his personal bank information. On April 30, 1992, from the ABC branch office in Pasadena, California, Pace faxed ABACO instructions to transfer any funds in the ABC account to his personal bank account in Ohio.

AFIMEX made two attempts to transfer the $18,740.00. On April 27, 1992, AFIMEX wrote a check out to ABC in the amount of $18,740.00, but mailed it to Pace's Ohio bank for deposit. The check did not clear because it was made payable to ABC. AFIMEX then deposited the amount into the ABC account at ABACO. On June 19, ABACO successfully wired the money to Pace's bank account in Ohio.

## B. Count 77

On or about May 8, 1992(*after* Pace faxed his wire transfer instructions), AFIMEX deposited another $17,919.28 to the ABC account at ABACO, which wired the amount to Pace's personal account in Cleveland, Ohio.

## C. Count 81

Pace's 1992 tax returns were prepared by accountant John Patton ("Patton") in Westlake, Ohio. Patton sent Pace a 1992 "organizer" in order to secure updated financial information from Pace for that tax year. The organizer was mailed to Pace's address in Arizona. Upon its receipt, Pace mailed a list of his 1992 income sources to Patton, but did not include any income from the ABACO wire transfers.

Enclosed in the organizer was also a questionnaire regarding income. Pace checked "no" when asked whether he had any income from foreign sources in 1992. Pace further replied that he had no financial interest in, or signing authority over, any foreign bank accounts.

Using the information provided in the organizer, Patton compiled Pace's 1992 statement of financial condition and sent it to Pace in Arizona. The statement did not list the ABC / AIG accounts at ABACO, and it did not report the $36,659.28 that Pace received as a result of the wire transfers. Pace verified the accuracy of the 1992 statement and assured Patton that, "to the best of [his] knowledge and belief," he had "made all financial records and related data available" to Patton. The confirmation letter listed Pace's Arizona address in its heading.

When Patton completed the tax return, he sent it to Pace in Tucson. Pace testified that he reviewed the return while he was out of town on a business trip and that he signed the return while he was in Buffalo, New York.

## D. Procedural history

On April 6, 1997, a federal grand jury filed an 81 count superseding indictment charging Pace with: conspiracy to commit mail fraud, mail fraud, wire fraud, money laundering, subscribing a false tax return, and forfeiture.[1]

At trial, through the testimony of an AFIMEX employee Carolina Garcia–Mena ("Garcia–Mena"), the government introduced a number of financial documents between AFIMEX and ABC, including: (1) an April 27 letter sent by AFIMEX in which it reported $18,740.00 in premiums owed to ABC; and (2) an April 30 correspondence from Pace to ABACO, confirming his instructions to wire all amounts deposited into the ABC / AIG accounts at ABACO to Pace's personal account in Ohio.

---

1. Counts 1 through 76 involve allegations that Pace, in his capacity as company director, used ABC to generate "kickbacks" to a real estate partnership owned by Pace and his son. Pace was acquitted of all counts related to this transaction.

On December 14, 2000, the jury acquitted Pace on all but three counts: Counts 77 and 78 (wire fraud) and Count 81 (making and subscribing a false tax return).

Several weeks after the jury verdict, the government disclosed a letter Garcia–Mena had written to the IRS two years earlier. The letter was written in response to the government's desire to utilize her as a trial witness ("the IRS letter.").

Garcia–Mena indicated that she could not confirm the accuracy of bank documents issued before she assumed a managing position at the treasury department of AFIMEX. She then recommended Julian Salle–Arevalo as a more appropriate witness.

Pace moved for a new trial based on the IRS letter's untimely disclosure. The district court found that the content of the IRS letter was already elicited during Garcia–Mena's cross-examination and denied the motion. At sentencing, Pace requested a downward departure based on the late disclosure. The district court denied the motion and granted a downward departure only for aberrant behavior. The court then ordered Pace to pay ABC $36,659.28 in restitution and sentenced him to four months of imprisonment, followed by concurrent two-year terms of supervised release on each count. This appeal follows.

## Discussion

### A. Wire fraud

Pace argues that venue for Counts 77 and 78 did not lie in Arizona because the "essential conduct" of wire fraud was not committed there. The government contends that venue appropriately lay in Arizona pursuant to one of two statutes.

First, it contends that venue could lie pursuant to the "continuing offense" statute of 18 U.S.C. § 3237(a) because Pace's wire fraud scheme was "begun" or at least "continued" while he was in Arizona. Alternatively, the government contends that venue was proper under the "high seas" statute, 18 U.S.C. § 3238, because the wire transfers originated in Mexico.

█ The Sixth Amendment and Rule 18 of the Federal Rules of Criminal Procedure guarantee that a defendant will be tried in the state where the crime was committed. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed.R.Crim.P. 18. When a defendant has been indicted on multiple counts, venue must be proper for each count. *United States v. Corona*, 34 F.3d 876, 879 (9th Cir.1994). The government bears the burden of establishing venue by a preponderance of the evidence. *United States v. Angotti*, 105 F.3d 539, 541(9th Cir.1997). "[D]irect proof of venue is not necessary where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid." *United States v. Childs*, 5 F.3d 1328, 1332 (9th Cir.1993) (internal quotation marks omitted).

█ In order to decide whether venue was proper in the District of Arizona, we "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999); *accord United States v. Ruelas–Arreguin*, 219 F.3d 1056, 1061 (9th Cir. 2000). To determine the "nature of the crime," we look to the "essential conduct elements" of the offense. *Rodriguez–Moreno*, 526 U.S. at 280, 119 S.Ct. 1239.[2]

---

**2.** We note that the Court in *Rodriguez–Moreno* recognized that the verbs of a statute may be helpful to "identify[ ] the conduct that constitutes an offense" but emphasized that the " 'verb test' . . . cannot be applied rigidly, to

■ The wire fraud statute, 18 U.S.C. § 1343, provides:

> Whoever, having devised or intending to devise any scheme ... to defraud, or for obtaining money or property by means of false or fraudulent pretenses ... transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings ... for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.

We have recognized that the nature of a wire fraud offense—the "gist and crux" of the offense—is the misuse of wires. *See United States v. Garlick*, 240 F.3d 789, 792(9th Cir.2001). It is appropriate, therefore, that we interpret the essential conduct prohibited by § 1343 to be the misuse of wires as well as any acts that cause such misuse. *See also Garlick*, 240 F.3d at 790(wire fraud statute prohibits the using or causing the use of wires as part of a fraudulent scheme).

■ The government, however, urges a broader reading of § 1343, and argues that venue is appropriate wherever Pace concocted his "scheme to defraud" ABC, AIG, AFIMEX and ABACO. Although a fraudulent scheme may be an element of the crime of wire fraud, it is using wires and causing wires to be used in furtherance of the fraudulent scheme that constitutes the prohibited conduct. *See, e.g., United States v. Condolon*, 600 F.2d 7, 8 (4th Cir.1979) (gravamen of wire fraud offense is the misuse of interstate communication facilities to execute any scheme to defraud). Venue may therefore lie only in those locations where the wire transmission at issue originated, passed through, was received, or from which it was "orchestrated," that is, caused. *See United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir.1994). Our focus on the use of the wires for venue purposes is consistent with our opinion in *Garlick*, in which we held that each use of the wires constitutes an independent violation of the law. 240 F.3d at 793. Multiple convictions can arise from the same fraudulent scheme. *See id.* A scheme to defraud, however, without the requisite illegal use of wires does not violate the wire fraud statute. *See, e.g., United States v. Dischner*, 974 F.2d 1502, 1521 (9th Cir.1992) (fraud need not succeed for there to be conviction under wire fraud statute), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031, 1035 n. 1 (9th Cir.1997) (en banc). Accordingly, venue may lie only where there is a direct or causal connection to the misuse of wires.

### A1. 18 U.S.C. § 3237(a)

■ "Crimes consisting of a single noncontinuing act are 'committed' in the district where the act is performed. Crimes that are not unitary but instead span space and time, however, may be considered continuing offenses under 18 U.S.C. § 3237(a). Continuing offenses may be prosecuted 'in any district in which such offense was begun, continued, or completed.'" *Corona*, 34 F.3d at 879; 18 U.S.C. 3237(a);[3] *see also Rodriguez–Moreno*, 526 U.S. at 281, 119 S.Ct. 1239("[W]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.") (internal quo-

---

the exclusion of other relevant statutory language." *Rodriguez–Moreno*, 526 U.S. at 280, 119 S.Ct. 1239.

**3.** 18 U.S.C. § 3237 provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

tations and citations omitted). Wire fraud is a "continuing offense," subject to § 1327, and thus venue may lie in all of the places where any part was accomplished. *See* 18 U.S.C. § 3237(a).

The government has not met the burden of showing that Pace "beg[a]n, continued, or completed" wire fraud in Arizona. It contends that Pace regularly communicated with ABACO and AFIMEX from his Tucson business address. As support, the government offers the testimony of Pace's secretary, who confirmed that Pace had a business address in Tucson and that parties who needed to communicate with him with respect to ABC affairs would write or fax him using that address. This information, by itself, does not indicate that Pace "used" wires in Arizona or that he otherwise "caused" such use from Arizona.

The government also identifies two communications that AFIMEX sent to Pace in Tucson, Arizona: (1) the April 27 letter, in which AFIMEX requested wire transfer instructions, and (2) the confirmation letter AFIMEX sent after it deposited $17,608.00 into the ABC / AIG accounts at ABACO. Neither of these communications "caused" the wire transfer at issue. The confirmation letter came after the wire transfer and thus obviously could not have caused it. The April 27 letter, in which AFIMEX requested wire transfer instructions, presents a slightly more difficult question. However, it was ABACO—not AFIMEX— that transferred the company funds to Pace's personal account. Therefore, the causal nexus between ABACO's wire transfer and the April 27 letter is not sufficient to satisfy the "caused" language for venue purposes.

The government argues that these two communications, at a minimum, suggest that Pace instructed ABACO to wire $18,740.00 to his personal account while he was in Arizona. The government's argument ignores evidence that Pace specifical-ly faxed ABACO the wire transfer instructions from Pasadena, California. Although Pace almost certainly received the April 27 request from AFIMEX and subsequently authorized his secretary to provide wire transfer instructions to ABACO, there is no direct evidence of the location from which he gave the authorization. The record contains no other correspondence regarding subsequent or alternative wire transfer instructions.

## A2. 18 U.S.C. § 3238

■ The government contends that, alternatively, venue exists pursuant to 18 U.S.C. § 3238, the federal venue statute for offenses begun or committed on the high seas or "elsewhere out of the jurisdiction of any particular State or district." The government contends that, under § 3238, venue could lie in the District of Arizona, where Pace was arrested.

■ A review of the record indicates that the wire fraud offense was "begun" in the United States. As we explained above, the wire fraud statute prohibits the use of wires, but also criminalizes conduct that "causes" a wrongful transmittal. *See* 18 U.S.C. § 1343. The offense will begin with the first prohibited act. Here, the transmissions were caused by a fax containing wire transfer instructions from Pace. Because this fax was sent from Pasadena, California, the offense began in the Central District of California, not in Mexico as the government alleges.

■ In addition, the offense was "committed" in part in the United States. Although the wire transfers originated in Mexico, they were received in Ohio. The wire fraud offense was, therefore, partially "committed" in the District of Ohio. *See Palomba*, 31 F.3d at 1461. It is true that the offense was also committed in Mexico, but § 3238 does not apply unless the offense was committed entirely on the high

seas or outside the United States (unless, of course, the offense was "begun" there).[4]

In sum, venue did not exist pursuant to the "high seas" venue statute because the wire fraud was not begun on the high seas or "out of the jurisdiction of any particular State or district" and it was committed in part in the United States.

### B. Subscribing a false tax return

 Pace contends that venue for Count 81 did not lie in the District of Arizona because his accountant prepared the false tax return in Ohio and Pace signed it in New York. Section 7206(1) makes it unlawful for any person willfully to make and subscribe a false tax return. *See* 26 U.S.C. § 7206(1). False statements may be "made" where they are ultimately received. *See United States v. Angotti,* 105 F.3d 539, 542 (9th Cir.1997). However, the offense does not begin and end there.

 A communication must be sent before it is received. Thus, the crime of "making" a false tax return commences when one furnishes information essential to the return, and is not completed until the information is received by the party to whom it was addressed. This conclusion is consistent with *Angotti,* 105 F.3d at 543, in which we held that "making" a false statement to a federal agency is a continuing offense and may be prosecuted in a district not only where the false statement is initially provided but where it is ultimately received. In so holding, we explained: "[t]he statements continued to be false ... not only when initially presented but also upon arrival [at the place] where the decision was reached ...." *Id.* at 542 (quoting *United States v. Candella,* 487 F.2d 1223 (2d Cir.1973)). Consequently, the offense may be tried in a district where the defendant prepared and transmitted the false statements. *Id.* at 544 (quoting *United States v. Zwego,* 657 F.2d 248, 251 (10th Cir.1981)).

The same can be said for an offense under § 7206(1). The act of making a tax return commences when one prepares and furnishes information material to the return and continues until that information is received by the IRS. For such continuing offenses, venue is proper in any district in which the continuing conduct has occurred. 18 U.S.C. § 3237(a); *see Rodriguez–Moreno,* 526 U.S. at 282, 119 S.Ct. 1239; *United States v. Barnard,* 490 F.2d 907, 910 (9th Cir.1973).

Here, Pace provided information essential to his tax return in Arizona. In response to a questionnaire sent by his accountant, Pace indicated he had no foreign income and no control over any foreign bank accounts in 1992. Based on the questionnaire, the accountant then compiled a statement of financial condition, which served as the basis for preparing Pace's tax return. The statement did not list the ABC / AIG accounts at ABACO, and it did not report the $36,659.28 that Pace received as a result of the wire transfers. Pace not only confirmed the statement's accuracy but also indicated that he had "made all financial records and related data available" to Patton. As Pace furnished information essential to the completion of the tax return in Arizona, the § 7206(1) offense was properly tried there.

### C. Motion for new trial, Sentencing

 Pace contends that the district court erred in denying his motion for a new trial or, alternatively, in failing to depart downward at sentencing because of the government's failure to disclose the

---

**4.** *But see United States v. Jensen,* 93 F.3d 667, 671 (9th Cir.1996) (B. Fletcher, J., concurring).

IRS letter written by Garcia–Mena, an AFIMEX employee testifying for the government. Garcia–Mena had indicated to the IRS that she could not testify as to the accuracy of AFIMEX documents drafted before she started in the company's treasury department. Because Garcia–Mena did not have "responsibility" in AFIMEX's treasury department until September 1992, Pace argues that two documents were improperly admitted through Garcia–Mena: (1) the April 27 letter in which AFIMEX reported the amount of premiums to ABC and requested Pace to send wire transfer instructions; and (2) the April 30 letter from Pace to ABACO, confirming his instructions to wire all amounts deposited into the ABC / AIG accounts to Pace's personal account in Ohio.

The record indicates that at least one of the documents would have been admitted even if Pace had timely learned of the IRS letter. The April 30 fax from Pace to ABACO was not introduced into evidence by Garcia–Mena, but by Pace's executive assistant, Carmen Barney, who identified the signature on the fax as that of Pace.

The April 27 correspondence, whether or not admitted, does not "weigh heavily against the verdict." *See United States v. Chen,* 754 F.2d 817, 821 (9th Cir.1985). The evidence remains uncontroverted that Pace faxed wire transfer instructions to ABACO on April 30, directing it to transfer all funds deposited in the ABC / AIG accounts to his account in Ohio. The evidence is also undisputed that, after receiving the fax, ABACO made two wire transfers in accordance with Pace's instructions. That *AFIMEX,* not ABACO, requested wire transfer instructions on April 27 does not materially address whether *ABACO* transferred funds pursuant to Pace's instructions.

Pace argues that the late disclosure also prevented him from subpoenaing a witness. The IRS letter identified accountant Julian Salle–Arevalo ("Salle–Arevalo") as one familiar with AFIMEX payment orders and accounts at the time of the wire transfers. Had he timely learned of this information, Pace argues, he would have called Salle–Arevalo to the stand and asked him to explain the wire transfers.

Pace's argument is misplaced, because Salle–Arevalo worked for AFIMEX, not ABACO. Accordingly, Salle–Arevalo could have testified that AFIMEX deposited a certain amount of premiums into the ABC / AIG accounts of ABACO. He would not, however, have first-hand knowledge to testify about correspondence between ABACO and Pace or any transfers that took place as a result of their communications.

Although the government erred by not timely disclosing the IRS letter, the error did not prejudice Pace as to warrant a new trial or, alternatively, a downward departure at sentencing.

## D. Restitution

Pace argues that he should not have to pay restitution to ABC because the company owes him over $800,000.00. We do not reach this issue in light of our decision to reverse his wire fraud convictions.

We **AFFIRM** Pace's conviction on Count 81, **VACATE** the judgment of conviction on Counts 77 and 78, and **REMAND** for resentencing on Count 81.