**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert H. HOPKINS, Jr., Morten
Hopkins, and John W. Harrell,
Defendants–Appellants.**

**No. 89–1666.**

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1990.

210

John H. Hagler, Dallas, Tex., for defendants-appellants.

Karen Skrivseth, Crim. Div., Appellate Section, Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before POLITZ and JOHNSON, Circuit Judges.[1]

**1.** Judge Brown was absent for a portion of the argument in this case. Accordingly, and with

JOHNSON, Circuit Judge:

Defendants Robert H. Hopkins, Jr., Morten Hopkins, and John W. Harrell appeal from their convictions on various charges of conspiring to commit an offense against the United States, willfully causing the concealment of material facts from a federal agency, willfully misapplying the funds of an institution insured by the Federal Savings and Loan Insurance Corporation, and of knowingly making false entries in the records of that institution. The defendants engaged in all of these activities in order to disguise illegal corporate political contributions to various political action committees.

The defendants urge five grounds for reversing their convictions. They argue 1) that the evidence was not sufficient to establish that they possessed the mental states required for conviction, 2) that the trial court abused its discretion in failing to grant a two week continuance in the midst of their trial, 3) that the trial court improperly allowed the Government to introduce evidence of an extrinsic act, 4) that it was improper for the defendants to be prosecuted under general federal fraud, concealment, and misapplication of funds laws because their actions fall within the ambit of more specific federal election statutes, and 5) that the trial court's orders of restitution were not supported by sufficient factual bases. Because none of the issues raised by the defendants evinces reversible error, the judgment of the district court will be affirmed.

## I. FACTS AND PROCEDURAL HISTORY

The details of the defendants' schemes to circumvent the federal election laws, and specifically the prohibition on corporate political contributions, are quite complex. It is not necessary to recount them here. It is enough to say that each of the defendants was an officer or director of one or more savings and loan institutions, and that they wished to make large contributions to various candidates or political groups in an effort to prevent passage of

the consent of the parties, the case is being decided by a two judge quorum.

legislation that they felt was unfavorable to the savings and loan industry. Because federal law prohibits federally insured savings and loans from making political contributions, the defendants devised a scheme by which the savings and loans which they controlled would make political contributions indirectly: individual officers and employees of the institutions would be required to make contributions and would then be reimbursed for those contributions by the institution. The reimbursements were disguised either as pay raises or as reimbursements for legitimate business expenses. In the course of this scheme, the defendants falsified various records of the financial institutions involved and concealed certain facts from both bank examiners and federal election authorities.

The defendants were indicted on 47 counts. The charges can be grouped into four categories:

**2.** The defendants were charged under 18 U.S.C. § 371, which provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** The crime is defined in 18 U.S.C. § 1001:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

To the extent that the defendants themselves did not actually falsify or conceal any documents or records, they are charged with causing such to be done. 18 U.S.C. § 2 provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**4.** This crime is defined in 18 U.S.C. § 657:

Count 1 conspiring to commit an offense against the United States,[2]

Counts 2 & 3 knowingly and willfully causing another to conceal a material fact from the Federal Election Commission,[3]

Counts 4–25 knowingly and willfully misapplying the funds of an institution having accounts insured by the FSLIC,[4] and

Counts 26–47 knowingly and willfully causing false entries to be made in the records of an institution having accounts insured by the FSLIC.[5]

The trial lasted four weeks. Defendants Robert and Morten Hopkins (who are brothers) were convicted on all 47 counts. Robert Hopkins was sentenced to concurrent five-year prison terms on counts 1–39, to be followed by five years' probation on counts 40–47. In addition, he was ordered to make restitution of $104,062 to the savings and loan he and his brother controlled.

> Whoever, being an officer, agent or employee of or connected in any capacity with ... any lending, mortgage, insurance, credit or savings and loan corporation or association authorized or acting under the laws of the United States or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ... embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, ... shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both....

**5.** This crime is defined in 18 U.S.C. § 1006:

> Whoever, being an officer, agent or employee of or connected in any capacity with ... any lending, mortgage, insurance, credit or savings and loan corporation or association authorized or acting under the laws of the United States or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ... with intent to defraud any such institution ... or to deceive any officer, auditor, examiner, or agent of any such institution or of [any] department or agency of the United States, makes any false entry in any book, report or statement of or to any such institution ... shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both.

As with the charges of concealing material facts, to the extent that the defendants did not themselves make any false entries in the records of their savings and loans, they are charged with causing such entries to be made, under 18 U.S.C. § 2. *See* note 3, *supra*.

Morten Hopkins was sentenced to five years' probation, with the first six months in confinement, and was also ordered to make restitution of $104,062.

John Harrell was convicted on only two counts, numbers 43 and 44, for knowingly and willfully causing false entries to be made in the records of an institution having accounts insured by the FSLIC. Harrell was sentenced to five years' probation with the first six months in confinement, and ordered to make restitution of $4,000.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

The defendants admit that they engaged in the activities that constitute indirect corporate political contributions. They challenge their convictions by arguing that the prosecution failed to present evidence sufficient to prove that the defendants possessed the mental states required for conviction by the statutes under which they were charged. The standard of review of a claim of insufficiency of the evidence is well settled.[6] The conviction must be sustained if, considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Weddell*, 800 F.2d 1404, 1406–07 (5th Cir.1986). Viewed under this standard of review the evidence was plainly sufficient to support each of the defendants' convictions.

### 1. Conspiracy to Commit an Offense Against the United States

■ Count 1 of the indictment charges the defendants with conspiracy to defraud or commit an offense against the United States. Defendants Robert Hopkins and Morten Hopkins were convicted of this offense.

■ To establish a conspiracy under 18 U.S.C. § 371 the Government must prove that there was an agreement between two or more persons to defraud the United States or to violate a law of the United States, that one of the persons committed an overt act in furtherance of the conspiracy, and that the defendant possessed the requisite intent to further an unlawful objective of the conspiracy. *United States v. Medrano*, 836 F.2d 861, 863–64 (5th Cir.), *cert. denied*, 488 U.S. 818, 109 S.Ct. 58, 102 L.Ed.2d 36 (1988); *United States v. Colwell*, 764 F.2d 1070, 1072 (5th Cir.1985). The agreement necessary to establish the existence of a conspiracy can be established by circumstantial evidence:

> [w]here the circumstances are such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement, the conclusion that a conspiracy is established is justified.

*American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). *See also United States v. Cuni*, 689 F.2d 1353, 1356 (11th Cir. 1982); *United States v. Graves*, 669 F.2d 964, 969 (5th Cir.1982). There need not be an express or formal agreement; a tacit understanding is sufficient. *Ianelli v. United States*, 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289 n. 10, 43 L.Ed.2d 616 (1975); *United States v. Martin*, 790 F.2d 1215, 1219 (5th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986).

---

**6.** The Government argues that defendants Robert and Morten Hopkins have failed to preserve their right to a review in this Court on the sufficiency of the evidence. If the defendants have not preserved their right to appellate review on the sufficiency of the evidence, this Court reviews the judgment of the district court only for plain error, or to prevent a manifest miscarriage of justice. *See United States v. Osgood*, 794 F.2d 1087, 1093 (5th Cir.), *cert. denied*,

479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986).

Although the Government's argument has merit, it is unnecessary to decide whether the defendants have properly preserved their right to appellate review on the sufficiency of the evidence, because there is ample evidence in the record to sustain the defendants' convictions under any standard.

A rational jury could easily conclude that the evidence proved the Hopkins' agreement to violate the law. The evidence showed that the Hopkins together conducted meetings for their employees about contributing to a political action committee that Robert Hopkins had formed, that both Hopkins received copies of the by-laws of that political action committee, that both had authority to sign checks for the political action committee, that both were involved in deciding that officers of the savings and loan would be reimbursed for their contributions to the political action committee by way of pay raises and in deciding the amount of those raises, and that both contacted officers of the savings and loan to solicit political contributions which were reimbursed through false cash advances or travel vouchers. A jury could readily infer from these circumstances that Robert and Morten Hopkins shared a unity of purpose or common design to arrange and disguise indirect corporate political contributions.

Having presented ample proof of an agreement between the defendants, the next question is whether the Government also satisfactorily proved the defendants' intent to commit an offense against, or defraud the United States. The Supreme Court has defined this element of the crime under § 371:

> To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation [or] chicane[ry].

*Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). *See also Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966).

The statute "is designed and intended to protect the integrity of the United States and its agencies, programs and policies." *United States v. Burgin*, 621 F.2d 1352, 1356 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). *See also United States v. Winkle*, 587 F.2d 705, 708 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). Moreover, the evidence need not show that a conspirator had specific knowledge of the regulations, nor need it conclusively demonstrate a conspirator's state of mind; "[i]t suffices to show facts and circumstances from which the jury reasonably could infer that [a conspirator] knew her conduct was unauthorized and illegal." *United States v. Bordelon*, 871 F.2d 491, 494 (5th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 121, 107 L.Ed.2d 82 (1989).

There was ample evidence tending to show that defendants Robert and Morten Hopkins knew that their conduct was illegal and unauthorized, and that they intended to interfere with the proper functioning of at least three federal agencies: the Federal Election Commission (FEC), the Federal Savings and Loan Insurance Corporation (FSLIC), and the Federal Home Loan Bank Board (FHLBB). Viewed in the light most favorable to the Government, the evidence showed that both Hopkins received documents which stated that corporate political contributions were illegal. It showed that both were active in deciding how to reimburse employees with corporate funds for their contributions. It showed that both signed forms which indicated that employees were receiving pay raises because their status had changed when in fact the employees received pay raises only so that they could contribute the money to the Hopkins' political action committee. Finally, the evidence showed that both Robert and Morten Hopkins either approved individual reimbursements for political contributions or assured officers of the corporation that they would be reimbursed. From all of this evidence a jury could reasonably infer that the Hopkins were aware that savings and loans were not allowed to make political contributions, and that the steps they took to disguise the contribu-

tions were designed to evade the Federal Election Commission's reporting requirements. It has long been recognized that "efforts at concealment [may] be reasonably explainable only in terms of motivation to evade" lawful obligations. *See Ingram v. United States,* 360 U.S. 672, 679, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959).[7]

Moreover, a rational jury could also infer from the evidence before it that the Hopkins intended to interfere with the proper functioning of the FSLIC and the FHLBB.[8] The savings and loan that was controlled by the Hopkins was insured by the FSLIC; the FSLIC was under the direction of the FHLBB. The Government introduced testimony from a federal bank examiner regarding the various regulations of savings and loans that were insured by the FSLIC. Those institutions were required to file periodic reports so that their financial health could be monitored and were required to provide bank examiners with a salary schedule so that the examiners could determine the reasonableness of compensation levels. The regulations also provided that a savings and loan could not contribute to political action committees or federal candidates.

From the evidence before it the jury could reasonably have inferred that the Hopkins intended to circumvent or violate all of these requirements. Both Hopkins had been bank officials for many years and both had experience with bank examinations. They used corporate funds for a purpose forbidden by both federal election laws and banking regulations. They made or caused to be made false entries in bank records as to officers' true salaries, and falsified bank records as to travel and other business expenses. All of these activi-

ties indicate either knowledge of the banking laws or a desire to avoid them, or both.

In sum, the Government presented ample evidence of an agreement between Robert and Morten Hopkins to interfere with the proper functioning of the FEC, the FSLIC, and the FHLBB. Accordingly, the Government adequately proved the necessary elements of the offense charged under § 371.

### 2. Causing the Concealment of a Material Fact from the Federal Election Commission

■ Counts 2 and 3 of the indictment charged that the defendants violated, or caused to be violated, 18 U.S.C. § 1001, which prohibits the knowing or willfull concealment of material facts from an agency of the United States. Robert and Morten Hopkins were both convicted on these counts for concealing material facts from the Federal Election Commission in two reports to the FEC from the Hopkins' political action committee.

■ The Hopkins first contend that the Government did not present sufficient evidence to prove that the defendants' failure to disclose the true source of the political contributions was willfull. The Hopkins' contention is meritless. The Government may prove that a false representation is made "knowingly and willfully" by proof that the defendant acted deliberately and with knowledge that the representation was false. *United States v. Guzman,* 781 F.2d 428, 431 (5th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). The Government here presented ample evidence to establish both of these items. The jury was entitled to infer from the defendants' elaborate scheme for dis-

---

7. The Hopkins contend that they did not know the election laws and that they did not conspire to violate them. Such a contention is not well taken. The Hopkins were not charged with violating the election laws or conspiring to violate them; they were charged, among other things, with conspiring to commit an offense against the United States under § 371. The evidence was sufficient to show that the Hopkins knew that corporations could not make political contributions, and that their scheme to disguise corporate contributions as individual contributions would interfere with the proper

reporting of campaign contributions to the FEC. That evidence is sufficient to sustain their convictions under § 371.

8. These agencies no longer exist. After the defendants' offenses were committed, FSLIC and FHLBB were abolished and their functions transferred to other agencies. *See* 12 U.S.C. § 1437, *repealed by* Act of August 9, 1989, Pub.L. No. 101–73, § 703(a), 103 Stat. 415; *See also* Act of August 9, 1989, Pub.L. No. 101–73, §§ 401–406, reprinted at 12 U.S.C.A. § 1437, note.

guising their corporate political contributions that the defendants deliberately conveyed information they knew to be false to the Federal Election Commission.

The Hopkins also contend that if false reports were made, they did not make them or cause them to be made. While it may be true that the Hopkins themselves did not make the reports, it is clear that they deliberately caused those reports to contain false information.[9] The evidence showed that by keeping him unaware of their scheme, the Hopkins caused another individual, the Treasurer of their political action committee, to report to the Federal Election Commission that the contributions to the political action committee were from individuals. "[I]t is well-established that [18 U.S.C.] § 2(b) was designed to impose criminal liability on one who causes an intermediary to commit a criminal act, even though the intermediary who performed the act has no criminal intent and hence is innocent of the substantive crime charged." *United States v. Tobon–Builes,* 706 F.2d 1092, 1099 (11th Cir.1983). *See also United States v. Cure,* 804 F.2d 625, 629 (11th Cir.1986).

### 3. Misapplication of the Funds of an Institution Having Accounts Insured by the FSLIC

■ Counts 4 through 25 of the indictment charged the defendants with violations of 18 U.S.C. § 657, which prohibits the knowing or willfull misapplication of funds of an institution having accounts insured by the FSLIC. Defendants Robert and Morten Hopkins were both convicted on all 22 counts.

■ To establish an offense under § 657, the Government must prove that 1) the defendant was an officer, agent or employee of, or connected in some way with, a savings and loan association whose accounts were insured by FSLIC, 2) that he willfully misapplied funds of the association, and 3) that he acted with intent to injure or defraud the association. *United States v. Stovall,* 825 F.2d 817, 823 (5th

Cir.1987). The Hopkins contend, without force, that the evidence was insufficient to prove that their misapplication of funds was willfull or that they intended to injure or defraud the savings and loan.

■ Under § 657, one way that the Government may prove willfull misapplication of funds is by showing that a person has deliberately converted bank funds to his own use or to the use of a third person, or that the person has used the funds in violation of the law. *Hernandez v. United States,* 608 F.2d 1361, 1364 (10th Cir.1979). *See also United States v. Bruun,* 809 F.2d 397, 408 (7th Cir.1987) (interpreting a parallel provision in 18 U.S.C. § 656). Here the jury could well have concluded from the evidence before it that the Hopkins knew that savings and loans could not make political contributions, and therefore devised and pursued a scheme under which institutional funds would indirectly be routed to political action committees of their choosing. The Hopkins thus deliberately converted bank funds to the use of third persons and did so in violation of the law.

■ The evidence was also sufficient to show that the Hopkins acted with intent to injure or defraud their savings and loan. Such intent "is proven by showing a knowing, voluntary act by the defendant, the natural tendency of which may have been to injure the bank even though such may not have been his motive." *United States v. Southers,* 583 F.2d 1302, 1305 (5th Cir. 1978). *See also Bruun,* 809 F.2d at 408; *United States v. Farrell,* 609 F.2d 816, 820 (5th Cir.1980). The jury could reasonably have concluded that the Hopkins' activities had a natural tendency to injure their institution in at least two respects. First, the misapplication of funds reduced the amount of money available for lawful investment. Second, if federal bank examiners had learned of the illegal contributions, the FHLBB could have imposed various monetary sanctions on the savings and loan, including restricting the institution's financial activities. Accordingly, the

---

**9.** As noted above, 18 U.S.C. § 2 renders liable as a principal anyone who aids, abets, counsels, commands, induces, or procures a violation of federal law. *See* note 3 *supra.*

Government adequately proved that the Hopkins willfully misapplied the funds of the savings and loan they controlled and did so with intent to injure that institution.

### 4. Causing False Entries to be Made in the Records of an Institution Having Accounts Insured by the FSLIC

Counts 26 through 47 of the indictment stated charges against all three of the defendants here under 18 U.S.C. §§ 2, 1006, namely, that they knowingly and willfully made or caused to be made false entries in the records of an institution having accounts insured by the FSLIC. Robert and Morten Hopkins were convicted on all 22 of these counts; John Harrell was convicted on only two. The Hopkins contend that the evidence was insufficient to show that they acted with the requisite mental state; Harrell contends that the evidence was insufficient to show that he caused false entries to be made. These arguments have no merit.

■■■■ To prove a violation of § 1006 the Government must show that 1) the defendant was an officer, agent, or employee of an institution having accounts insured by the FSLIC, 2) that he knowingly and willfully made a false entry in the records or books of the institution, and 3) that he acted unlawfully and intended to injure, defraud, or deceive the bank or any of its officers, auditors, examiners, or agents. *United States v. Tullos*, 868 F.2d 689, 693–94 (5th Cir.1989). *See also Stovall*, 825 F.2d at 822. As the Hopkins did in respect to the charges brought under 18 U.S.C. § 657, they again argue that the Government did not produce sufficient evidence to prove that they had any intent to injure or defraud their savings and loan.

The requirements for making out a violation of § 1006 are very similar to those under § 657. Both allow conviction upon proof that the defendants acted with intent to injure or defraud their institution. Thus, the evidence that allowed the jury to conclude that the Hopkins acted with intent to injure or defraud the institution with respect to the

charges brought under § 657 also suffices for the charges brought under § 1006.

■■■ Harrell contends that the evidence was insufficient to show that he caused false entries to be made in the records of the savings and loan. Harrell is incorrect. There was ample evidence from which the jury could reasonably have concluded that Harrell did cause false entries to be made. As to count 43, the first count on which he was convicted, Harrell personally approved an expense report of one of the institution's officers which disguised a political contribution as travel expenses. While Harrell testified that he signed a partially blank form which was later altered by someone else, his former secretary testified that he was very careful about checking the accuracy of expense reports, and that she would not have had him sign a blank form. Harrell was also the institution's expert on compliance with federal regulations and knew the importance of keeping accurate records.

In reaching its verdict the jury was entitled to weigh the evidence and resolve any evidentiary conflicts. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. Here the jury simply resolved the conflict in favor of the Government. The jury could reasonably have believed and weighed more heavily the documentary evidence and the testimony of his secretary than it did Harrell's own testimony, and reached a guilty verdict as a result.

Similar reasoning applies to Harrell's second conviction. As to that count, which also charges that Harrell caused to be made a false report in order to reimburse a corporate officer for his contribution, there was evidence that Harrell told the officer to contribute to the political action committee and that he would be reimbursed for his contribution. There was also testimony from which the jury could reasonably infer that Harrell knew that the reimbursements were being made from corporate travel funds. Taken together, this testimony would allow the jury reasonably to conclude that Harrell caused a false expense report to be made and approved.

In sum, when viewed in the light most favorable to the Government, the evidence was sufficient to allow the jury to find the defendants guilty beyond a reasonable doubt on each of the offenses of which they were convicted.

### B. *The Trial Judge's Refusal to Grant a Continuance*

■■■ The defendants next argue that the trial judge erred by refusing to grant them a two week continuance in the midst of the trial so that they could examine 18 recently discovered boxes of correspondence and other documents of John Harrell. The boxes were discovered during the defense's presentation of its case in a storage room at the savings and loan of which Harrell was formerly an officer. Although defense counsel initially told the trial court that he thought the trial could proceed, after further review of the documents defense counsel requested a two week continuance. The trial court denied that particular motion but then allowed defendants two days to conduct their review. The defendants used a part of this time to review the documents, and the trial proceeded.

After the verdict was rendered the defendants filed a motion for a new trial on the grounds that they were prejudiced by the trial court's failure to grant their request for a two week continuance. The district court denied the motion on the basis of several findings. First, the district court found that the Government was unaware of the existence of the documents, and that the Government was not in any way responsible for their belated discovery. Second, the district court found that Harrell already had or could readily have obtained many of the documents, since they were correspondence either from him or to him, or other documents that he had previously read or prepared. Third, the district court found that much of the rest of the material was not relevant or was only collaterally relevant. Fourth, the court found that the documents that Harrell would have introduced contained evidence that was available from other witnesses, or that the documents would have been of no help to Harrell's defense. Finally, the court found

that Harrell did nothing to try to mitigate any possible prejudice. Harrell's counsel reviewed the documents for less than an hour instead of the two days offered by the court, proceeded to question Harrell before examining the documents, and declined the court's invitation to reopen direct examination of Harrell to permit him to explain the documents that the Government intended to use on cross-examination.

■■■■■ It is well settled that the decision to grant a continuance lies within the sound discretion of the trial judge and is subject to reversal only for an abuse of that discretion. *United States v. Webster,* 734 F.2d 1048 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Whether a continuance was properly denied depends on the circumstances of the case. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). The relevant circumstances include the amount of time available, the defendant's role in shortening the time needed, the likelihood of prejudice from a denial, and the availability of discovery from the prosecution. *See United States v. McDonald,* 837 F.2d 1287, 1289 (5th Cir.1988); *United States v. Garmany,* 762 F.2d 929, 936 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 811, 88 L.Ed.2d 785 (1986). Judged by these factors, it cannot be said that the trial court abused its discretion in denying the continuance.

First, the defendants did not do what they could to shorten the time needed to review the documents. They spent only a fraction of the time allotted and declined the trial judge's offer to continue the trial for the rest of the day. Moreover, given that the Government was able to identify overnight several documents that it wished to use to cross-examine Harrell, it seems clear that the defense could have made profitable use of time offered. Second, the defendants have shown no prejudice from the denial of the continuance. All of the information in the documents was either 1) previously known or available to Harrell, 2) available from other sources known to the defendants, 3) irrelevant to the case, 4) of no assistance to the defense, or 5) cumula-

tive of other testimony. Accordingly, the trial judge did not abuse his discretion in denying the continuance.

## C. *Evidence of a Prior Bad Act*

 The defendants next argue that the trial court erred by improperly admitting evidence of an extrinsic act which tended to show that Morten Hopkins and John Harrell acted with intent to injure the savings and loan institution. In particular, the defendants complain of the admission of testimony from a former vice president of the savings and loan that on an earlier occasion she was told by Morten Hopkins and John Harrell to conceal certain bad loans from state bank examiners.

The trial court admitted the testimony under Fed.R.Evid. 404(b).[10] The trial court found that the evidence met the requirements of *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979): the evidence was relevant to Morten Hopkins' and Harrell's intent to commit the offenses charged, and its probative value was not outweighed by any danger of undue prejudice.

In addition, the court gave an appropriate limiting instruction. Before the former vice president testified, the court cautioned the jury not to consider the testimony in connection with deciding whether the defendants did any of the acts alleged, but only in connection with determining their state of mind. The jury is presumed to have followed the instruction. *See Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983). Consequently, the trial court did not err in admitting the evidence. *See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *United States v. Cordell*, 912 F.2d 769, 775 (5th Cir.1990).

## D. *Prosecution Under General Fraud and Misrepresentation Laws*

 The defendants next argue that their convictions under Title 18 for fraud, concealment, and misapplication of funds (which are felonies) are improper because the defendants should have been prosecuted only under the federal election laws (which create only misdemeanors). This contention is meritless. It is well settled that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). *See also Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985); *United States v. Cavada*, 821 F.2d 1046, 1048 (5th Cir.), *cert. denied*, 484 U.S. 932, 108 S.Ct. 304, 98 L.Ed.2d 262 (1987). The only exception arises where Congress clearly intended that one statute supplant another; the fact that one statute is more specific than the other is not sufficient. *See United States v. Zabel*, 702 F.2d 704, 707–08 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983). Nor does the fact that one statute prescribes a felony and the other prescribes a misdemeanor affect the prosecutor's authority to choose among statutes. *See Cavada*, 821 F.2d at 1048–49; *United States v. Barrett*, 837 F.2d 933 (10th Cir.1988); *United States v. Edmondson*, 792 F.2d 1492 (9th Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987).

There is no indication in the federal election laws that Congress intended them to supplant the general criminal statutes found in Title 18. *See* 2 U.S.C. § 437g(d)(1)(A) (imposing criminal penalty for violation of federal election laws). Moreover, the defendants in this case violated not only the election laws but also committed acts that constituted independent violations of the more general criminal

---

**10.** Federal Rule of Evidence 404(b) provides:
(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

statutes of Title 18. Conviction under those sections requires proof of elements not required to prove a violation of the election laws. The offenses under Title 18 thus stand wholly apart and separate from any violation of the federal election laws. The defendants' contention that they were improperly prosecuted under Title 18 is without support.

### E. *The Orders of Restitution*

Finally, the defendants challenge the amounts of restitution that they were ordered to pay. The defendants were properly convicted, and there was ample evidence by which the trial court could accurately calculate the amounts of the restitution orders. There was testimony as to the amount of money paid in political contributions, the amount of money given to employees as pay raises, and the amount of money paid as reimbursement for contributions under the guise of legitimate business expenses. The trial court did not err in the amounts of the restitution orders.

### III. CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.